

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. A. B. Connor, Director
Texas Agricultural Experiment Station
College Station, Texas

Dear Sir:

Opinion No. O-1817
Re: Article 1489, R. C. S. --
Feeding stuffs -- Farm
livestock -- Legal Authority
to regulate the manufacture
and sale of dog and cat foods.

We beg to acknowledge receipt of your letter of January 3, 1940, requesting a legal opinion from this department as follows, to-wit:

"The dog and cat food industry is continually increasing in importance and during the past few years has become a major industry. According to the Bureau of the Census, 412 million pounds of canned dog food, having a value of more than twenty million dollars, were produced during 1937, the most recent year for which official figures are available. In addition there is a considerable volume of dry dog and cat food produced.

"These products are found on sale in practically every town and city in Texas; much of it is manufactured in the State and a great deal is shipped from without the State. One firm in Houston, for instance, manufactures and sells approximately one million cans per month not all of which is consigned to Texas points.

"In order to standardize the quality and weights of dog and cat food through the registration, labeling, and enforcement

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of adequate definitions and standards, considerable pressure is brought to bear upon the Division of Feed Control Service of this Station for the adoption of such a program as a part of our regulatory activities in connection with the administration of the Pure Feed Law.

"Article 1489, chapter 13, Revised criminal Statutes, 1925, provides, in part, that 'Every lot or parcel of feeding stuff, used for feeding farm live stock, sold, offered or exposed for sale in this State, for use within the State, shall have attached a tag described in article 1492.' We will appreciate an opinion from you as to whether dogs and cats can be classified as 'farm live stock' and whether we have the legal authority to regulate the manufacture and sale of dog and cat foods, canned and dry, under the provisions of the Pure Feed Law referred to above."

It is the opinion of this department that dogs and cats cannot be classified as "farm livestock", within the meaning of the statutes under consideration, and that, therefore, the statute does not confer authority to regulate the manufacture and sale of dog and cat food, under the provisions of the Pure Feed law of this State.

The first rule of construction laid down by our statutes is that the ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject matter. (Rev. Civ. Stat. Art. 10). This is the rule specially prescribed with respect to civil statutes.

The Penal Code provides:

"This code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the con-

struction of penal laws and laws upon
other subjects; and no person shall
be punished for an offense which is
not made penal by the plain import of
the words of a law."   (P.C.Art.7)

Now, Article 1489 of the Penal Code is a part
of Chapter 13, entitled "Protection of Stock Raisers."
The term "farm livestock", as used in this statute, is
not to be construed or interpreted in a strictly etymo-
logical sense, but rather in the sense in which the Leg-
islature used the words.  In the popular understanding
"livestock" is used in the sense of animals bred and
raised for market or use by the owner.  Indeed, the
stock industry is a term of well-defined meaning through-
out the country.  The use of the word "farm" in connect-
ion with livestock in the Article under consideration, of
course, narrows the subject from that comprehended by the
general term of stock raising or stock industry.  It limits
it to the livestock usually found on the farm.

The words "farm livestock", therefore, embrace
such livestock as cattle, horses, mules, sheep, goats,
hogs and the like — those animals usually found on farms,
bred and raised for use or sale by the owner.  This com-
ports with the popular understanding of the term "farm
livestock", and is the sense in which the Legislature
meant to employ the words as we interpret the legislative
intention.

This conclusion is accentuated by the fact that
the statute is a criminal statute, and it is not the plain
import of the words of the statute that the Legislature
meant to punish as an offense the failure to label dog
food and cat food, as it has required with respect to the
ordinary farm livestock feeds.

Following these ordinary and accepted rules of
construction it has been held that a dog was not an animal
within the meaning of a statute requiring a lookout to be
kept for animals, or other obstructions upon the railroad
tracks.  (Howard v. Nashville, Chattanooga & St. Louis Ry.
Co., 284 S. W. 894).  The construction of the word indi-
cated by us not only comports with the common understand-
ing and the judicial decisions, but it likewise comports
with the definition given by our standard dictionaries.
Thus, Funk & Wagnals defines the word "livestock" as "do-
mestic animals kept for farm purposes, especially market-
able animals, as cattle, horses and sheep".  This precise

definition is adopted by Corpus Juris, vol. 38, p. 70.

Our Court of Appeals has held that a dog was not "stock", within the meaning of a statute requiring a railroad to fence its right-of-way. (Texas & Pacific Ry. Co. v. Scott, 4 Tex. Apps. Civ. Cases (Willson) 476, 17 S. W. 1118.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED JAN 12, 1940

OS-MR

FIRST ASSISTANT
ATTORNEY GENERAL

